ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| KiewitPhelps | ) | ASBCA Nos. 61184, 62119, 62980 |
| | ) | |
| Under Contract No. W9128F-12-C-0023 | ) | |

APPEARANCE FOR THE APPELLANT:      Vivian Katsantonis, Esq.
                                     Watt, Tieder, Hoffar & Fitzgerald, LLP
                                     McLean, VA

APPEARANCES FOR THE GOVERNMENT:   Michael P. Goodman, Esq.
                                     Engineer Chief Trial Attorney
                                    Brett R. Howard, Esq.
                                    James J. Irvine, Esq.
                                    James M. Pakiz, Esq.
                                    Anna F. Kurtz, Esq.
                                     Engineer Trial Attorneys
                                     U.S. Army Engineer District, Omaha

OPINION BY ADMINISTRATIVE JUDGE PROUTY
ON THE PARTIES' JOINT MOTION FOR
CONSENT JUDGMENT TO EFFECTUATE GLOBAL SETTLEMENT

Before the Board is a "Joint Motion for Consent Judgment to Effectuate Global Settlement" recently submitted by the parties (the joint motion). The joint motion represents that the parties' settlement agreement for these three appeals is "contingent upon the Board both entering a consent judgment in [a specified amount] and not publishing the May 4, 2026 decision in ASBCA No. 62119." Because the joint motion seeks an entry of judgment, the Board's internal rules require that it be decided by a three-judge panel. As explained below, although the Board welcomes the potential settlement of the appeals identified above, we cannot provide the parties the relief of declining to publish a decision that we have no legal basis to withhold. Accordingly, the joint motion is denied.

BACKGROUND

These three appeals all involve the same contract that the U.S. Army Corps of Engineers (the Corps) awarded appellant KiewitPhelps (KP) for the construction of a 916,000 square foot command facility for the U.S. Strategic Command. Many disputes arose during performance and KP filed several claims relating to this contract. Relevant here are the mold claim (ASBCA No. 61184); the delay and disruption claim

for the period November 30, 2014 through April 19, 2018 (ASBCA No. 62119); and the commissioning claim for delays and disruptions for the period January 1, 2018 through February 19, 2019 (ASBCA No. 62980).

On December 30, 2022, the Board issued a decision in ASBCA No. 61184, *KiewitPhelps*, ASBCA No. 61184, 23-1 BCA ¶ 38,254, finding entitlement for KP on the mold claim. The Board published the decision and ASBCA No. 61184 was remanded to the parties to attempt to negotiate quantum and is no longer pending before the Board, although the parties may return to the Board seeking a determination of quantum if they are unable to do so themselves.

On May 4, 2026, the Board issued a written and authenticated decision on the delay and disruption claim in ASBCA No. 62119, signed by the three judges on the panel considering the appeal and certified by the Board's Recorder as "the Opinion and Decision" of the Board. The next day, the Board provided copies of the decision to both parties. Because the appeal was subject to a protective order, the Board did not publish the decision; rather, the Board provided the parties an opportunity to request redactions by May 20, 2026. The Board explained that pursuant to the Freedom of Information Act (FOIA), the records and decision are releasable to the public unless one or more FOIA exemptions applies. The Board specifically stated that it would publish the decision, unredacted, unless the parties highlighted any portion or portions of the decision exempt from release under FOIA.

Rather than provide the Board notice regarding any redactions due to FOIA exemptions (or specifically acknowledging that no exemptions applied), the parties submitted the joint motion on May 19, 2026. The joint motion addressed not only ASBCA No. 62119, but also ASBCA No. 61184 (which, as noted, is no longer pending before the Board) and ASBCA No. 62980 (an appeal which had been stayed pending issuance of a decision in ASBCA No. 62119). As stated above, according to the joint motion, the parties reached a global settlement of all three appeals. The parties explained, however, that the "settlement agreement is contingent upon the Board both entering a consent judgment . . . and not publishing the May 4, 2026 decision in ASBCA No. 62119." (Joint mot. at 1)

After receipt of the joint motion, as a matter of courtesy, we convened a status conference with the parties to inform them that this decision would be published, our reasons for publishing the decision, and that publication would likely only draw more attention to the underlying decision which they have sought to suppress. We provided the parties the opportunity to withdraw the joint motion. Counsel for the Corps declined our offer and, instead, asked for and received the opportunity to provide supplemental briefing, which was submitted on June 10, 2026.

2

At the status conference and in its supplemental briefing (supp. br.), the Corps argued that it sought to prevent the publication of the decision because it had wished to appeal the decision but was foreclosed from doing so by the fact that the decision only addressed entitlement and thus would not be ripe for appeal until the Board decided quantum.[1] The Corps did not explain how our publication of the opinion would preclude its appeal any more than it would be delayed if we did not publish the opinion. Moreover, the Corps did not identify any specific basis for an appeal. In the status conference, counsel for the Corps made a somewhat undeveloped argument that there might be a conflict between the way our decision on the mold claim and the current decision considered the duty of good faith and fair dealing, but the supplemental briefing did not repeat this argument or identify any legal issues for which the recent decision would set undesirable precedent. At the status conference, we expressed the view that the Corps was essentially seeking to convert the decision to an advisory opinion. The Corps was not averse to this framing (*see* supp. br. at 3).

DECISION

The Corps' request to the Board to forego publishing our decision[2] is a rare one: to our knowledge, this has never been directly requested in our history, much less been granted, although a request for vacatur as part of (but not a condition to) a settlement was made and denied 27 years ago in *Ordnance Devices, Inc.*, ASBCA No. 42709,
99-1 BCA ¶ 30,304. In support of this request, the Corps first argues that the Contract Disputes Act (CDA) allows the Board to "issue a decision in writing or take other appropriate action on each appeal submitted" (joint mot. at 1 (quoting 41 U.S.C. § 7105(g)); *see also* supp. br. at 4). The Corps asserts that such "other appropriate action" includes not publishing a decision (joint mot. at 1-2; *see also* supp. br. at 4-5).

The Corps further argues that because the Board has not yet published its decision due to the protective order and because the decision only addresses entitlement and not also quantum, what the Board provided the parties is not a final decision (*see* joint mot. at 2-3). To the Corps, this has two consequences: first, it prevents it (as represented by the Department of Justice (DOJ)) from appealing the

---

[1] Although both parties could submit briefs in support of the joint motion, only the Corps provided a submission. Accordingly, we will refer to the arguments advanced in support of the joint motion as being made by the Corps rather than "the parties." As the Corps explains, and one can surmise, KP's position is that it "would like to receive payment as soon as possible and to avoid the cost of further litigation" (supp. br. at 1).

[2] Requests to partially redact decisions to protect from public disclosure such things as trade secrets and pricing data are, of course, routine and are routinely granted when supported.

3

case to the Federal Circuit (*see* supp. br. at 2-3); second, it relieves the Board of any obligation under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, to publish the opinion (*see id.* at 8-9). Finally, the Corps argues that, if we were to consider this a request that required vacatur, it should be granted on the equities (*see* joint mot. at 3-4; supp. br. at 6). None of these arguments are persuasive.

## I.      The Decision is Final for the Board's Purposes

To be sure, the United States Court of Appeals for the Federal Circuit (the Federal Circuit) does not consider our decisions appealable when we have retained jurisdiction to consider quantum, *see, e.g.*, *Sec. of Def. v. Pratt & Whitney*, 160 F.4th 1224, 1231 (Fed. Cir. 2025), but the Corps is mistaken when it conflates finality for our purposes and finality for the purposes of appellate jurisdiction. Board Rule 19, Decisions, makes no distinction between those decisions that address entitlement-only and those that also address quantum, nor is there any distinction in our practice because in both instances the appeal is considered to be closed. Moreover, Board Rule 20, Motion for Reconsideration, which applies to "decision[s] of the Board," also makes no such distinction and it has long been our practice to address such motions when the decision in question only addresses entitlement. Indeed, the Corps itself, has sought reconsideration of entitlement-only decisions before us in the past. *See, e.g.*, *John C. Grimberg Co.*, ASBCA Nos. 58791, 59717, 19-1 BCA ¶ 37,227. Finally, we consider our decisions on entitlement-only to be equally precedential and binding upon us as those that also address quantum—which is something that the Corps appears to understand when it implores us to not publish the decision so that it will not be binding (*see* supp. br. at 8-9).

## II.      The Board's Rules and FOIA Require Publication of our Decision

With the finality determination in mind, we turn to our rules and the law governing publication. Board Rule 19 states the Board shall issue written and authenticated decisions, which "will be available to the public" unless "required by law to be held confidential." The decision here was both written and authenticated. The Board's Recorder specifically identified it as our "decision" in the May 5, 2026 order conveying it to the parties which also informed the parties that the decision would be published and provided them the opportunity to highlight any portions of the decision that should be redacted as subject to FOIA exemptions. There can be no doubt that, under our rules, this decision is required to be published and, but for the protective order, we would already have published it.

Our rules are consistent with the statutory mandate of FOIA, which provides that "[e]ach agency, in accordance with published rules, shall make available for public inspection in an electronic format - (A) final opinions, including concurring and dissenting opinions . . ." 5 U.S.C. § 552 (a)(2). For the Board, this equates to

4

publication of the final decision on its website. Here we note that, notwithstanding the Recorder's invitation for them to do so, the parties have provided no bases under FOIA to limit the publication of any portion of the decision.[3] Instead, the only reason that the Corps provided in the joint motion to justify withholding the decision's publication is that it chose to make the settlement contingent upon it, although it now adds concerns about appellate review that we will address below. Those concerns, however, do not overcome FOIA.

In its supplemental brief, the Corps addresses our FOIA concerns by arguing that the "reading room" requirement, which the Board satisfies by publishing its decisions, would not be binding if we chose to make the decision non-precedential. Put another way, because the reading room requirement is in place to prevent the Board's reliance on "secret law," if we fail to publish the decision, it cannot be considered precedential and thus we do not need to publish it (*see* supp. br. at 8-10). That is a justification by circular argument that we decline to engage in.

Though the Corps is correct that the Board's Charter does provide the Chairman substantial authority over the inner workings of the Board (*id.* at 9), nothing before us today supports abandoning our rules and the letter and intent of FOIA.

III.    The Appellate Posture of this Case Does not Justify Suppressing its Publication

In its supplemental brief, the Corps adds an additional reason purporting to justify not publishing the decision: that it will not have the ability to have DOJ review the case for appeal because the quantum issue will still be pending (*see* supp. br. at 2). But this argument fails when subjected to scrutiny: this is a problem of the Corps' own making, that it could easily resolve if it wished to, which is contradicted by the Corps' own willingness to settle the cases, and which the Corps' implicit suggestion that it dislikes the precedent set by the decision is undeveloped and would be unpersuasive.

First, it was the Corps that requested, over the objection of KP, that we limit the appeal in this matter to the subject of entitlement and not address quantum issues (*KiewitPhelps*, ASBCA No. 62119 at 2 n.2). It cannot, then, persuasively complain of the inequities of the appellate consequences of getting what it wanted. Moreover, if it wished to expedite[4] appellate review, the Corps could simply stipulate with KP to a

---

[3] Given the time that has passed since contract performance, we would indeed be surprised if it contained any business or trade secrets regarding such things as pricing.

[4] It could always get appellate review by simply litigating quantum to its conclusion, though that would take more time, of course.

5

mutually agreeable quantum amount to be entered as the Board's final judgment, subject to appeal.

Of course, if the reasoning of the opinion were plainly legally flawed, we would expect that the Corps would not agree to the settlement presented here,[5] leaving the unspoken suggestion that what the Corps is truly concerned about is the precedential authority of the decision. But even that motivation collapses when subject to examination. We first note that the Corps never spells out in its supplemental brief what legal portion of the decision is the part to which it does not agree and that it would wish to have overturned on appeal lest it make bad precedent.[6] This contrasts poorly with *Ordnance Devices*, referenced earlier, in which a request for vacatur (which we, nevertheless, denied) explicitly set forth the precedential matter at issue and the particular problems it might cause in contract administration if the decision were not vacated. *See* 99-1 BCA ¶ 30,304 at 149,836-37. Our own review of our decision uncovers nothing that plows new or controversial legal ground. Instead, it consists of extensive findings of fact that are applied to well-established law. While the Corps may not like the result, as with many decisions, there is ample room for subsequent cases to be distinguished from this one on the facts. If and when such a distinction cannot be made, the Corps could always appeal then.

IV.     Vacatur (not Directly Requested, but Hinted at) is not Appropriate

The Corps' final argument in the original joint motion, as amplified in its supplemental brief, is that if we consider their request to be one for vacatur of our decision, such action on our part would be justified due to the benefits of settlement (*see* joint mot. at 3-4; supp. br. at 5). We disagree. Vacatur is "an extraordinary remedy." *U. S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). The decision to grant vacatur is an equitable one, requiring "exceptional circumstances [which] do not include the mere fact that the settlement agreement provides for vacatur." *Id.* at 29. As noted above, the Corps has given us nothing to justify not publishing our decision here except that it chose to make it a condition of settlement.[7]

---

[5] As noted in the joint motion, "[w]ith the benefit of [the] decision in-hand, the parties were able to compromise on issues that had become sticking points in the negotiation" (joint mot. at 2).

[6] We recognize, of course, that the decisions about whether to appeal a Board decision and the grounds of such an appeal are made by the Solicitor General. But those decisions are made in consultation with the agency and we would expect the Corps to have an idea at this point (the supplemental brief was submitted more than a month after we provided the decision to the parties) on what it would request DOJ to do and why.

[7] Indeed, Justice Scalia noted in *U.S. Bancorp* that the public policy in favor of settlement might be served by denying vacatur at the post-judgment stage,

6

That is not enough.  Indeed, since one of the parties here is the government, equitable concerns and the public policy interests in open government (as expressed, inter alia, by FOIA) would argue against granting vacatur even more than they do when the parties are exclusively private.

To supplement its vacatur-like[8] argument, the Corps cites *Federal Data Corp. v. SMS Data Products Group, Inc.*, 819 F.2d 277 (Fed. Cir. 1987) (*see* supp. br. at 5).  At first blush, *Federal Data* appears similar to our case:  it involved a board of contract appeals (the GSBCA) and the requested vacatur of a decision after the parties sought it as part of a settlement.  But the similarities end there.  *Federal Data*, which the Corps concedes predated the less vacatur-friendly *U.S. Bancorp* (*see* supp. br. at 5), involved a bid protest and injunctive relief from the GSBCA preventing continued performance of a contract by one of the parties, which had appealed prior to the settlement.  The issue in that appeal was that the parties could not end their dispute if the GSBCA refused to vacate the injunction, which prevented a return to the status quo ante.  *See Fed. Data*, 819 F.2d at 278-80.  Here, there is no injunction involved, which makes *SMS Data* inapposite.  Furthermore, the Corps has not identified any specific prejudice to either party if the decision were to be published.

The Corps makes two final arguments on vacatur-like relief, attempting to distinguish the decision here from the decision in *U.S. Bancorp*.  First the Corps asserts that our case is different because *U.S. Bancorp* considered the vacatur of an already-published opinion, where the opinion here has not yet been published (*see* supp. br. at 6).  Second, and the Corps says, more importantly, *U.S. Bancorp* was concerned with the important public interest in "judicial precedent in the context of the federal courts" as opposed to the "structure created by the CDA to resolve disputes filed in the boards of contract appeals" (*see id.* at 7).

With respect to the first distinction, on the opinion not yet being published, that is the classic distinction without a difference.  Why should the public interest in the decision be less because the public has not seen it yet?[9]  To the contrary, the previously unknown nature of the decision which the Corps asserts informed the settlement offer of significant government funds (joint mot. at 2) only increases the public interest in its being available for review.

---

thereby incentivizing the parties to settle before they have incurred the costs of litigation and imposed those costs on a tribunal.  *See* 513 U.S. at 27-28.

[8] The Corps never does directly request vacatur.

[9] In a sense, the Corps' position seems to link the public interest to the happenstance of whether a protective order delayed immediate publication when there is no logical reason for this to be so.

Turning to the second distinction, it is enough to say that we need not compare the relative importance of federal judicial decisions to the Board's decisions to find significant public interest in the latter, given both the consequences to the federal fisc and the interest in demonstrating to those who do business with the government that their legitimate complaints will be treated seriously and remedied, when appropriate, in accordance with the law. Not surprisingly, then, we have recognized *U.S. Bancorp* as the appropriate authority for our consideration of vacatur requests. *See Ordnance Devices,* 99-1 BCA ¶ 30,304 at 149,835.[10]

<u>CONCLUSION</u>

We commend the parties for their efforts to settle these appeals, but suppressing the issued, written decision here has not been justified and would be contrary to our rules and the law and is not the "other appropriate action" contemplated by the CDA that is asserted to be an option by the Corps. We have not been asked to do what the Corps requests here in recent memory and do not intend to start now on the weak justification before us. The joint motion is denied.

Dated: June 25, 2026

J. REID PROUTY
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

MICHAEL O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

---

[10] *Ordnance Devices*, in fact, was a remand from the Federal Circuit in accordance with *U.S. Bancorp* to consider a vacatur request made at the appellate level. *See Ordnance Devices, Inc. v. Dalton*, 173 F.3d 434 (Fed. Cir. 1998) (table).

8

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61184, 62119, 62980, Appeals of KiewitPhelps, rendered in conformance with the Board's Charter.

Dated:  June 25, 2026

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals